UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| James P. Shannon, | Case No. 18-cv-646 (WMW/LIB) |
| Petitioner, | |
| vs. | **REPORT AND RECOMMENDATION** |
| Minnesota Department of Corrections, et al., | |
| Respondents. | |

This matter comes before the undersigned United States Magistrate Judge pursuant to a general referral in accordance with the provisions of 28 U.S.C. § 636 and Local Rule 72.1, as well as, upon Petitioner James P. Shannon's Amended Petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, [Docket No. 6], and Respondent's Motion to Dismiss. [Docket No. 14].

**I.   Background**

On March 10, 1989, a jury convicted Petitioner of First Degree Criminal Sexual Conduct for the rape of an adult female, and he was sentence to a ninety (90) month term of imprisonment. (May 15, 2006, Finding of Fact, Conclusions of Law, and Order of Commitment [Docket No. 16], at 10]). On September 23, 1996, Petitioner plead guilty to the May 24, 1996, rape of an adult female while he was on supervised release from his previous conviction, and on December 5, 1996, Petitioner was sentenced to a 153-month term of imprisonment. (Id. at 12–13). On April 1, 1997, after the entry of a guilty plea in Federal Court for being in possession of a stolen firearm during the 1996 rape, Petitioner was sentenced to a term of imprisonment of 120-months. (Id. at 13).

On September 19, 2005, before Petitioner was set to be paroled from state prison, a petition was filed seeking to commit Shannon as a "sexual psychopathic personality" and a "sexual dangerous person." (Id. at 3). Shannon was subsequently released from state prison to the custody

of the Federal Bureau of Prisons to serve the remaining two-months of his federal sentence before the beginning of his supervised release. (Id. at 4).

On December 16, 2005, Petitioner was ordered to be held at the Minnesota Sex Offender Program (hereinafter "MSOP") facility at St. Peter, Minnesota pending the issuance of the state court "order committing or releasing Shannon after" his civil commitment hearing. (Id. at 4). However, on January 3, 2006, Petitioner was arrested at the MSOP for an incident occurring at the MSOP, and based on that incident, the Minnesota Department of Corrections instituted proceedings to revoke Petitioner's supervised release. (Id. at 4). On January 19, 2006, the Minnesota Department of Corrections revoked Petitioner's "supervise release and ordered that he be returned to prison." (Id. at 4).

On May 15, 2006, Petitioner was committed to the Minnesota Sex Offender Program as a Sexually Dangerous Person on an intermittent basis. (Id. at 38). The commitment order specifically noted that Shannon would remain in the custody of the Minnesota Department of Corrections until released by that agency and that the commitment would not become final until after a statutory review hearing which would not be held until after Shannon was released from prison to be returned to the MSOP.

Shannon was released from custody of the Minnesota Department of Corrections and returned to the MSOP on July 9, 2008. (Order for Indeterminate Commitment as a Sexually Dangerous Person, [Docket No. 16], at 39). A hearing regarding Shannon's civil commitment was held on October 28, 2008, at which he appeared and testified. (Id. at 40).

On November 18, 2008, the state court issued an order committing Shannon "to the Minnesota Sex Offender Program as a Sexually Dangerous Person for an indeterminate period of

time." (Id. at 45). Shannon appealed that November 18, 2008, civil commitment Order to the Minnesota Court of Appeals.

Shannon was represented by counsel in his appeal of the November 18, 2018, civil commitment Order. In his appeal, Shannon argued that the evidence as a whole did not support his commitment and that the statutes governing his civil commitment were unconstitutional as applied to him. Specifically, Shannon argued that the statutes governing his civil commitment violated his substantive due process rights because they were not narrowly tailored to serve a compelling state interest, violated his rights to equal protection under the laws because he was "singled out among other criminal offenders for special treatment under Minnesota law" due to his designation as a sex offender, were void for vagueness, constituted circumstance of double jeopardy, and violated his right to a jury trial. (Appeal Brief, [Docket No. 16], at 68–95).

On January 14, 2008, the Minnesota Department of Corrections revoked Shannon's parole due to his "[f]ailure to refrain from assaultive, abusive, or violent behavior or threats of violence" while at the MSOP. (MN DOC Review, [Docket No. 16], at 176). Ultimately, it was decided that Shannon's parole would be revoked and his incarceration with the Minnesota Department of Corrections would be extended until its expiration on June 26, 2018. (Id. at 176, 189).[1]

On May 9, 2009, the Minnesota Court of Appeals issued an unpublished opinion affirming Shannon's civil commitment for an indeterminate length of time. In re Civil Commitment of Shannon, No. A09-0070, 2009 WL 1375988, at *1 (Minn. Ct. App. May 19, 2009). In affirming Shannon's civil commitment, the Minnesota Court of Appeals specifically addressed and rejected each of Shannon's constitutional arguments noting that each argument had previously been rejected by controlling case law. See, Id.

---

[1] Shannon remained in the custody of the Minnesota Department of Corrections until June 26, 2018, at which time he was returned to the MSOP. (Change of Status Report, [Docket No. 16], at 221).

Shannon subsequently petitioned the Minnesota Supreme Court for discretionary review. In his Petitioner for Review, Shannon raised three constitutional arguments—specifically, "whether Minnesota's commitment process is in violation of the due process, equal protection and double jeopardy provisions of the United States Constitution." (Pet. for Review to Minn. Supreme Ct., [Docket No. 16], at 154).

On July 22, 2009, the Minnesota Supreme Court denied Shannon's petition for discretionary review. (Order, [Docket No. 16], at 159).

On May 1, 2015, while he was in the custody of the Minnesota Department of Corrections, Shannon filed a pro se Notice of Motion and Motion, as well as, documentation in support of said Motion in the Hennepin County District Court in his civil commitment case. (Notice of Motion and Motion, [Docket No. 16], at 163–180). In that Motion, Shannon sought "immediate release . . . due to violation of due process of law and [to] correct manifest injustice due to breach of promise." (Id. at 165). Shannon asserted that he was warranted "immediate release" because he was not present at all proceedings which constitutes a violation of his due process rights and because his guilty plea was involuntary which constitutes a breach of promise. (Id.). Essentially, Shannon sought an order of the court releasing him from the custody of the Minnesota Department of Corrections and allowing him to withdraw his guilty plea. (See, Id.).

On July 31, 2015, the Hennepin County District Court Judge issued an Order denying the relief requested in Shannon's pro se Motion. (Order, [Docket No. 16], at 184). The Order noted that Shannon's Motion was being denied because he sought relief in his criminal case, and therefore, the civil court in which Shannon was civilly committed was not the correct jurisdiction to seek such relief. (Id.).

On February 2, 2016, Shannon filed a Petition for Writ of Habeas Corpus in Hennepin County District Court making assertions substantially similar to his May 1, 2015, Motion. (See, Pet., [Docket No. 16], at 185–191). Shannon appears to have again been seeking immediately release from the Minnesota Department of Corrections. (See, Id.).

However, on February 3, 2016, Hennepin County District Court Judge Jamie Anderson issued an Order denying Shannon's Petition for Writ of Habeas Corpus. (Order, [Docket No. 16], at 212). The Order noted that Shannon's Petition, like his previous one, was being denied because he sought relief in his criminal case, and therefore, the civil court in which Shannon was civilly committed was not the correct jurisdiction to seek such relief. (Id.).

On September 15, 2017, Shannon filed a document he entitled a Motion for Clarification of Sentence in the Hennepin County District Court case in which he was civilly committed. (Motion, [Docket No. 16], at 211–213). In that Motion, Shannon asserted that "Hennepin County does not have jurisdiction to civil commitment [sic] Mr. Shannon" because Anoka County had said jurisdiction. (Id.). Neither the Motion itself nor any supporting documents elaborated on Hennepin County's alleged lack of jurisdiction. (See, Id.). It does not appear from the record now before the Court that the Hennepin County Court responded to Shannon's Motion for Clarification of Sentence.

Shannon initiated the proceedings now before this Court on March 8, 2018, by filing his Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. [Docket No. 1]. That Petition was originally assigned to the Honorable Wilhelmina M. Wright, as the District Court Judge assigned to the case, and the Honorable Katherine M. Menendez, as the Magistrate Judge assigned to the case.

5

On April 16, 2018, Magistrate Judge Menendez issued an Order, [Docker No. 4], informing Shannon that his initial pleading was "defective in several critical respects." (Order, [Docket No. 4], at 1). The Order instructed Shannon to file an amended habeas petition that complied with all the requirements of said Order. (Id.).

On May 29, 2019, Shannon filed his now operative Amended Petition. [Docket No. 6]. And on October 4, 2018, Magistrate Judge Menendez issued an Order establishing a briefing schedule on Shannon's Amended Petition. (Order [Docket No. 7]). In that Order, Magistrate Judge Menendez noted that the "Court interpret[ed] Shannon's petition for a writ of habeas corpus as challenging the validity of any ongoing *civil* commitment" and "[a]ccordingly, neither the Minnesota Department of Corrections nor Tom Roy appear to be proper respondents to this matter." (Id. at 1, n 1) (emphasis in original). Therefore, Magistrate Judge Menendez directed the "state . . . to supply the name of the appropriate respondent, consistent with Fed. R. Civ. P. 25(d)." (Id.).

On October 11, 2018, Assistant Attorney General, Matthew Frank, filed a letter indicating that it was his "understanding that the Hennepin County Attorney's Office will appear in this matter for respondent" and 'because Mr. Shannon is currently only in the custody of the Department of Human Services for his civil commitment, the respondent should be the Department of Human Services Commissioner Emily Piper." (Id.).

On October 12, 2018, the present case was reassigned to the undersigned after Magistrate Judge Menendez recused herself from the present case. (Order of Recusal [Docket No. 9]).

On November 1, 2018, pursuant to Magistrate Judge Menendez's previous Order, Respondent Emily Johnson Piper, Commissioner of the Minnesota Department of Human Services, filed her "Answer and Motion to Dismiss Habeas Petition." [Docket No. 14]. In support

6

of her Motion, Respondent filed a memorandum, [Docket No. 15]; an Appendix of exhibits, [Docket No. 16]; and a Certificate of Service, [Docket No. 17], indicating that the Motion, Memorandum, and Appendix of exhibits were served upon Shannon.

Although directed to do so within thirty days after Respondent filed her Answer, Shannon did not reply or respond to Respondent's "Answer and Motion to Dismiss Habeas Petition." Shannon's time to do so has now passed. (See, Order [Docket No. 7]).

## II.    Analysis

Shannon's Amended Petition is before the Court pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts. Based on that review, this Court concludes that Shannon's Petition is untimely and that no exception to the timeliness requirements applies in this case.

Accordingly, it is recommended that Shannon's Amended Petition, [Docket No. 6], be summarily dismissed.

As noted above, Magistrate Judge Menendez previously determined that Shannon's Amended Petition was challenging the validity of his civil commitment. Shannon has not objected to that characterization of his Amended Petition nor offered any alternative characterization of his Amended Petition. Accordingly, the sole issue before this Court in Shannon's Amended Petition is the validity of his civil commitment.[2]

Shannon challenges his civil commitment on four grounds: (1) he was unconstitutionally kept in the custody of the Minnesota Department of Corrections based on an improperly based

---

[2] The Court notes that to construe Shannon's Amended Petition in any other manner would result in rendering his Amended Petition moot as he has now been released from the custody of the Minnesota Department of Corrections, he is no longer subject to any kind of supervised release based on the record now before the Court, and he fails to make any argument that he is actually innocent of the crimes underlying his incarceration with the Minnesota Department of Corrections. See, Lewis v. Cont'l Bank Corp., 494 U.S. 472, 477 (1990); Woodward v. Fondren, No. 8-cv-194 (ADM/JJK), 2008 WL 5214396, at *2 (D. Minn. Dec. 12, 2008).

plea agreement with the "Hearing and Release Unit" during his incarceration; (2) that he was "kept illegally in Hennepin County Jail" because state officials incorrectly believed he had "escap[ed] from custody in 1976" and because he had previously "made a plea agreement with the Hearing and Release Unit" to serve "365 days" of additional incarceration if the "civil commitment would be dismiss[ed]"; (3) because after serving "365 days on [his] conditional release" the Minnesota Department of Corrections did not take Shannon to "the Judge" before transferring him to the MSOP; and (4) because he was denied "sex offender program" treatment while he was incarcerated with the Minnesota Department of Corrections due to his, at the time, having already been civil commitment on a temporary basis. (Amended Pet., [Docket No. 6], 7–10). As relief, Shannon seeks "release." (Id. at 15). It is less than clear to the Court how Shannon believes each of these incidents warrants his release, and Shannon has failed to provide any supporting arguments other than his conclusory assertions to indicate how each of these arguments, individually or collectively, warrant his "release."

An in-depth analysis of the merits of Shannon's claims is unnecessary, however, because Shannon's Amended Petition, and even his initial Petition, are plainly barred by the relevant statute of limitations.

Under 28 U.S.C. § 2244(d)(1):

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of —
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed,

8

>if the applicant was prevented from filing by such State action;
>
>(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). The later three of these provisions are inapplicable to the present case because (1) Shannon fails to assert that any impediment to filing was created by State action in violation of the Constitution or the laws of the United States; (2) Shannon is not asserting that he is entitled to relief pursuant to a constitutional right only recently recognized by the Supreme Court; and (3) Shannon's present claims are not predicated on any new factual predicate. Therefore, in the present case, the limitations date can only be established by § 2244(d)(1)(A).

Under § 2244(d)(1)(A), the Petition is plainly untimely. Shannon was civilly committed to the MSOP on an intermittent basis on May 15, 2006. (May 15, 2006, Finding of Fact, Conclusions of Law, and Order of Commitment [Docket No. 16], at 38]). On November 18, 2008, the state court issued an Order committing Shannon "to the Minnesota Sex Offender Program as a Sexually Dangerous Person for an indeterminate period of time." (Order for Indeterminate Commitment as a Sexually Dangerous Person, [Docket No. 16], at 45). On May 9, 2009, the Minnesota Court of Appeals issued an unpublished opinion affirming Shannon's civil commitment for an indeterminate length of time. In re Civil Commitment of Shannon, No. A09-0070, 2009 WL 1375988, at *1 (Minn. Ct. App. May 19, 2009). On July 22, 2009, the Minnesota Supreme Court denied Shannon's petition for discretionary review of his civil commitment. (Order, [Docket No. 16], at 159). Shannon then had ninety days, or until October 20, 2009, in which to file a Petition

9

for a Writ of Certiorari with the Supreme Court of the United States. When Shannon failed to do so his civil commitment became final on that date for purposes of § 2244(d)(1)(A). See, 28 U.S.C. § 2244(d)(1)(A); Snow v. Ault, 238 F.3d 1033, 1035 (8th Cir. 2001). Therefore, the limitations period established by § 2244(d)(1)(A) expired exactly one year later, on October 20, 2010. See, 28 U.S.C. § 2244(d)(1)(A).

Shannon did not place his habeas Petition which initiated the present action in the internal mail system at the institution where he is confined until March 2, 2018. (See, Petition Affidavit of Service [Docket No. 1-2]).  This was plainly too late.

In certain circumstances petitioners may qualify for the actual-innocence gateway around the timeliness requirement established by § 2244(d). See, McQuiggin v. Perkins, 569 U.S. 383, 386 (2013) ("[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or, as in this case, expiration of the statute of limitations."). But the Supreme Court has cautioned that "tenable actual-innocence gateway pleas are rare," Id.

Even assuming solely for the sake of argument that a petitioner challenging his civil commitment can rely on the actual-innocence gateway given that civil commitment is not exclusively based upon a finding of guilt, Shannon's present claims fail to make any assertion that he was actually innocent of any of the crimes discussed in his civil commitment proceeding and Order. (See, Amended Petition [Docket No. 6]). Nor does any other evidence offered by Shannon suggest his innocence of the underlying offenses. Therefore, in the present case, Shannon has failed to make any threshold showing of innocence sufficient to justify this matter going forward despite the lapsing of the limitations period on October 20, 2010.

Because it is evident to the Court from the face of Shannon's initial habeas Petition, Shannon's operative Amended Petition, and the relevant state-court records that Shannon's Amended Petition is barred by the statute of limitations, the undersigned recommends that Respondent's Motion to Dismiss, [Docket No. 14], be **GRANTED**, and the operative Amended Petition, [Docket No. 6], be **DENIED**.[3]

## III.   Certificate of Appealability

Only one matter merits further comment: A § 2254 habeas corpus petitioner cannot appeal an adverse ruling on his petition unless he is granted a certificate of appealability (hereinafter "COA"). See, 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA cannot be granted unless the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000).

In the present case, it is highly unlikely that any other court, including the Eighth Circuit Court of Appeals, would treat Shannon's current Amended Petition differently than it is being treated here. Shannon has not identified, and this Court cannot discern, anything novel, noteworthy

---

[3] The undersigned notes that in addition to being untimely Shannon's Amended Petition also warrants dismissal due to his failure to exhaust his available state court remedies. See, 28 U.S.C. § 2254(b) (providing that as a general rule "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State"); Rose v. Lundy, 455 U.S. 509, 210 (1982) (providing that a federal district court must dismiss a state prisoner's habeas corpus petition is it contains both unexhausted an exhausted claims). Pursuant to the Minnesota Statutes governing civil commitment, a civilly committed person may petition for release from civil commitment on the basis that he is no longer mentally ill or a danger to the community. Minn. Stat. § 253D.27. In the present case, the record is devoid of any indication that Shannon ever petitioned for a reduction in his term of civil commitment or a release from civil commitment under the processes provided for in Minn. Stat. § 253D.27; instead, Shannon, as previously described herein, filed several motions in state court regarding his criminal convictions, as well as, multiple state-law habeas petitions challenging the constitutionality of his confinement with the MSOP based on his underlying criminal convictions. Because Shannon has not sought a reduction in civil commitment or a release from civil commitment pursuant to Minn. Stat. 253D.27, Shannon has failed to exhaust his available administrative remedies. See, Friend v. Piper, No. 17-cv-4356 (SRN/HB), 2018 WL 4017671, at *7 (D. Minn. July 11, 2018) report and recommendation adopted, 2018 WL 4011568 (D. Minn. Aug. 22, 2018).

11

or worrisome about this case that warrants appellate review. It is therefore further recommended that Shannon not be granted a COA in this matter.

### IV. Conclusion

Therefore, based on the foregoing, and on all of the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED THAT**:

1. Respondent's Motion to Dismiss, [Docket No. 14], be **GRANTED**;

2. Shannon's operative Amended Petition for a writ of habeas corpus, [Docket No. 6], be **DENIED as untimely**;

3. No certificate of appealability be issued.

Dated: June 4, 2019　　　　　　　　　　　　s/Leo I. Brisbois_____
　　　　　　　　　　　　　　　　　　　　　Hon. Leo I. Brisbois
　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

### NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).